Curtis A. McCLANAHAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 38253.

Court of Criminal Appeals of Texas.

June 2, 1965.

Rehearing Denied Oct. 13, 1965.

Jack W. Knight, Orville A. Harlan, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, James C. Brough and Erwin G. Ernst, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is the unlawful sale of a narcotic drug, to-wit, demerol; the punishment, confinement in the Texas Department of Corrections for 7 years.

The indictment on which appellant was tried alleges in pertinent part that: "Curtis A. McClanahan on or about the 31st day of December, 1962, in said county and state, did then and there unlawfully sell to Ardelle LoCascio a narcotic drug, to-wit, demerol."

Ardelle LoCascio was the first witness for the State. She testified that she presented to appellant a forged prescription,

purportedly signed by Dr. I. S. McReynolds, M.D., and made for the benefit of a Clara D. Elliott, when appellant sold her the demerol in issue. This forged prescription is State's Exhibit No. 3 and is also Defendant's Exhibit No. 1. It is dated 12–31–62. Mrs. LoCascio testified that she paid for the demerol on December 31, 1962, with a personal check made out to cash, and erroneously dated 1–2–1962. She had intended to make it for 1–2–1963, the 2nd day of the following month in the new year. This check was endorsed by typewriter on the back, reading "McClanahan Pharmacy For Deposit Only".

Dr. McReynolds, who was purported to have signed the prescription, testified that he did not sign it, and that Mrs. LoCascio was not a patient of his.

Mrs. LoCascio testified that she had known Mr. McClanahan for years, had traded with him extensively, had bought narcotics from him without a prescription previously, and that he had taught her how to forge prescriptions for narcotics. State's Exhibits 1 and 2 include 23 purported prescriptions, which Mrs. LoCascio testified she forged. They were made out to the benefit of four different names, none of which was hers, and purported to be signed by two different doctors on their prescription blanks. Mrs. LoCascio testified she used all of them to obtain narcotics directly from appellant. She testified that she wrote some of these in the back of the drugstore. They were admitted on the limited issue of intent and system.

For the same limited purpose, more than 300 other purported prescriptions which appellant filled for narcotics, and marked as State's Exhibit Nos. 13 through 45, inclusive, were introduced into evidence. Witness Bobby Carroll Parson testified that he forged most of these, that all of them were forged, and that he got them all filled by appellant. The prescriptions were made to various names, and the witness testified that appellant would honor as many as three different prescriptions on three different doctors all at one time in one day and give him the narcotics, none of it being in his name. Parson testified that out of approximately 261 prescriptions that he passed in Houston, he passed all of them at McClanahan's Pharmacy, excepting one. That one he attempted to pass at Jones Apothecary and got arrested as a result.

Mrs. LoCascio testified that some of the drugs which Parson bought from appellant, Parson resold to her and her husband, and that appellant knew this and tried to discourage it.

Another group of purported prescriptions were filled by appellant for Kenneth Gayle Ferguson, who testified that he had known appellant for four or five years, that all of the prescriptions were to the name of a person other than himself, that appellant called him Gayle and sold him the drugs on presentation of these forged prescriptions.

Envelopes, in which Mrs. LoCascio had had films developed and which bore the name LoCascio were introduced into evidence without objection. Mrs. LoCascio testified that appellant wrote her name and address on the envelopes.

M. B. Hightower, a member of the Houston Police Department Narcotics Section, testified that he observed the prescriptions introduced into evidence when, in his capacity as a member of the Narcotics Section, he asked appellant to let him see his narcotics prescriptions for the preceding two years. This request was made in connection with examination of appellant's records, the officer testified, without objection.

It was approximately January 16, 1963, that the officer had a conversation with appellant at appellant's pharmacy at 5703 Almeda Road, Houston, Harris County, Texas, relating to the forged prescription which is State's Exhibit No. 3 and Defendant's Exhibit No. 1. This is a prescription for five ampules of demerol. It is this sale for which appellant was indicted. As they went through the prescriptions, Officer

Hightower asked appellant if he could describe the person who passed or had that prescription filled, and appellant replied that he remembered the individual. He described her as a female, red-headed, approximately 35 to 40 years old, and said her name was LoCascia or LoCascio, or something of that nature, her first name being Ardelle or Odell.

Asked by Officer Hightower why he remembered this prescription particularly, appellant replied that Ardelle LoCascio had been in the store that day and had asked him if he had any narcotics, and that he told her, "Well, yes, but you will have to have a prescription". The woman said that she would go to her doctor and get one. She was gone a short period of time and came back with this prescription, and Hightower testified appellant said, "I know that she didn't have time to go to the doctor".

Appellant was asked then by Officer Hightower why he would fill this prescription, which was to the benefit of Clara D. Elliott, when he knew the individual's right name. Appellant replied, "Oh, I didn't even notice that". The officer testified that when he questioned appellant as to why he did not require that the narcotic registry number of the doctor who wrote the prescription be placed thereon, he never received any answer from appellant.

Officer Hightower testified that appellant told him he filled approximately 360 prescriptions for Bobby Carroll Parson. When the officer discussed with appellant that there were many different people named in the prescriptions as being the beneficiaries, and that Bobby Carroll Parson's name did not appear, he got no answer. The officer testified appellant told him he knew the individual known as Kenneth Gayle Ferguson.

During his direct examination, the officer testified, without objection, that demerol is a trade name for isonipecaine, being the trade name of Winthrop Pharmaceutical Company for isonipecaine.

On cross-examination, Officer Hightower, in reply to questions of appellant's counsel, testified that he determined appellant was a duly licensed and practicing pharmacist under the laws of the State of Texas, and had a current narcotics permit from the United States Government on display. Appellant's counsel also brought out that when the officer asked appellant why he didn't notice the names of the persons getting the prescriptions, appellant replied variously: "I just didn't notice it", or "Oh well, that is all right."

Being asked if the law didn't require a doctor to put his narcotic stamp number on his prescription, the appellant would reply: "Oh, I don't know."

■ Appellant's first contention is that the trial court reversibly erred in overruling his exceptions to the indictment and his motion to quash. He contends that by virtue of his status as a duly licensed and registered pharmacist, it not appearing from the face of the indictment what elements of the alleged offense he would be met with upon the trial, he was unable to prepare his defense. Section 2 of Art. 725b, Vernon's Ann.P.C., sets forth the prohibited act, under which appellant was indicted. Section 2A provides for exceptions where authorized under the terms of the Act, and these two sections must be construed together, De Vine v. State, 151 Tex. Cr.R. 179, 206 S.W.2d 247, cited and followed in Leonard v. State, 172 Tex.Cr.R. 394, 356 S.W.2d 926 at page 927. It is not necessary for the pleadings to negative exceptions under this Act. Medina v. State, 149 Tex.Cr.R. 249, 193 S.W.2d 196; Torres v. State, 161 Tex.Cr.R. 480, 278 S.W.2d 853. It is not necessary for the state to allege and prove that the appellant is not a pharmacist. Manson v. State, 166 Tex.Cr. R. 514, 316 S.W.2d 414; Bridges v. State, 166 Tex.Cr.R. 556, 316 S.W.2d 757. It is appellant's position that he is indicted only under Section 2 of this Act and therefore the issue of good faith or bad faith, which would come under Section 6 of Art. 725b,

V.A.P.C., is not subject to proof or a charge by the Court. Section 6 actually gives effect to Section 2A and sets forth those individuals who may legally proceed, naming those whose acts shall not be unlawful. These individuals referred to in Section 2A and Section 6 must then necessarily claim their exceptions or exemptions and the legality of their acts as a bar to prosecution. It is their burden to do so and not that of the state. The state alleged and proved unlawful possession. This proof also showed that appellant was a licensed and registered pharmacist. Appellant could have relied defensively upon this issue. The state then proceeded to prove lack of good faith on the part of appellant. We perceive of no error in the action of the trial court in overruling appellant's motion to quash.

We find no merit in appellant's second contention that the trial court reversibly erred in overruling his motion for an instructed verdict of not guilty. The evidence was amply sufficient to sustain the verdict. This contention is overruled.

Appellant next contends that the trial court reversibly erred in admitting into evidence various state's exhibits, same being numerous other prescriptions filled by appellant. We find no error in the action of the trial court. These exhibits were properly admitted to show intent, scheme and design. O'Brien v. State, Tex. Cr.App., 376 S.W.2d 833; McClelland v. State, Tex.Cr.App., 389 S.W.2d 678, and cases there cited. The careful trial judge properly instructed the jury that they were admitted for this limited purpose.

The fourth proposition urged as error by appellant is what he terms the action of the trial court in limiting his cross-examination of the state's witness, Ardelle LoCascio. Appellant desired to learn where else the witness was buying drugs. The state contended that she was an informant, but she testified that she was not. While the question constituted proper cross-examination, we fail to find the materiality nor do we see how appellant was harmed by not getting an answer to the question. Although the trial court's ruling was erroneous, it was harmless and does not constitute reversible error.

Appellant's fifth proposition is levelled at the trial court's charge. He contends that the court erred in charging that demerol is a narcotic drug. We find no merit in this contention. While demerol is not mentioned in the Act, Section 1(14) includes *isonipecaine* as a "Narcotic drug". Officer Hightower testified that demerol is a trade name for isonipecaine. The charge of the court in this respect conformed to the proof. We find no error in the action of the court in so charging. Under the next two contentions with reference to the Court's charge being erroneous and constituting reversible error, appellant complains that the Court shifted the burden of proof and submitted an issue not plead in the indictment. The trial court instructed the jury to acquit if they believed or had a reasonable doubt that appellant was actually selling the narcotics as a pharmacist in good faith. We find nothing in this instruction which was prejudicial to appellant. The evidence reflected that appellant was a licensed, registered pharmacist. We find no harm in the Court's action in gratuitously charging. The second contention under this phase of appellant's objection, numbered by him as (3) in his brief, complains of a lack or failure of the trial court to charge upon circumstantial evidence. After carefully reviewing the entire record, we find no basis for appellant's contention. The evidence was real and demonstrative and a charge upon circumstantial evidence was not called for. The last portion of the Court's charge to which appellant objected and urges as error was the failure of the trial court to instruct the jury that the two witnesses, Parson and Ferguson, were accomplice witnesses as a matter of law. The trial court instructed the jury, as a matter of law, that Ardelle LoCascio was an accomplice witness and

submitted to them the issue of accomplice witness as to Ferguson and Parson. The jury was properly instructed as to necessity for corroboration. Neither Ferguson nor Parson was in any way connected by testimony with the sale of narcotics for which appellant was tried. If a state's witness has no complicity in the offense for which an accused is on trial, his testimony is not that of an accomplice whatever may have been his complicity with the accused in the commission of other offenses. Washburn v. State, 167 Tex.Cr.R. 125, 318 S.W.2d 627, and cases there cited.

By formal bill of exception appellant complains of the action of the trial court in overruling his motion to quash the jury panel because of certain questions propounded to the panel by the Assistant District Attorney. We have examined this contention with care and find no error in the action of the trial court.

We have examined the remaining informal bills of exception not briefed by appellant. We do not find reversible error reflected by any of them.

■ The sentence orders that the imprisonment be for a period of not less than *two* nor more than seven years. It is reformed to read "not less than five years nor more than seven years", five years being the minimum punishment for the offense charged. Art. 847 V.A.C.C.P., note 14; Perez v. State, 172 Tex.Cr.R. 492, 358 S.W.2d 381.

As reformed, the judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

■ Appellant urges that we distinguish the case at bar from the opinion of the Supreme Court of the United States in Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240. In Russell the accused was not informed in the indictment as to the matter which was being investigated by the Legislative Committee nor was he told the questions which he was alleged to have refused to answer. To bring this case within the rule in Russell, the indictment would have to have alleged that appellant sold an unnamed drug to an unnamed person on the day in question. Had this indictment been so indefinite, we would have no hesitancy in agreeing with appellant, but here we have the name of the drug and the name of the purchaser, and the rule in Russell and the other cases cited by appellant have no application.

■ Appellant further contends that we have approved the admission of the numerous other forged prescriptions upon a theory not authorized by the charge, i. e., on the issue of intent. He relies upon Cole v. State of Arkansas, 333 U.S. 196, 68 S. Ct. 514, 92 L.Ed. 644. Such was not our intention. According to the officer's testimony, appellant stated that the purchaser returned to his drug store in such a short length of time that it was highly improbable that she might have secured a legitimate prescription. In order to demonstrate that appellant knew that the prescription involved in the instant case was not genuine, it was proper for the State to show that appellant had in his possession numerous other prescriptions which were forged. This is the same line of reasoning employed by this Court in the recent case of Hill v. State, Tex.Cr.App., 364 S.W.2d 381.

Remaining convinced that we properly disposed of this appeal originally, appellant's motion for rehearing is overruled.